# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CRAIG DAVID ERVING,

        Petitioner,               Case Number: 2:08-CV-12258

v.                                  HON. DENISE PAGE HOOD

BLAINE LAFLER,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Craig David Erving ("Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is currently incarcerated at the Carson City Correctional Facility in Carson City, Michigan for convictions on two counts of unarmed robbery. Petitioner challenges his convictions on the following grounds: (i) the giving of an unarmed robbery jury instruction denied Petitioner a fair trial; (ii) counsel's failure to object to the unarmed robbery instruction constituted ineffective assistance of counsel; and (iii) the trial judge erred in scoring Petitioner's offense variables during sentencing. Because the unarmed jury instruction is supported by the record and counsel's failure to object to the instruction was an instrument of sound trial strategy, and because Petitioner's sentencing claim is non-cognizable on habeas corpus review, this Court will deny the petition.

## I. Facts

Petitioner's convictions arise from the robbery of two individuals during the early morning hours of August 1, 2004, in the City of Detroit. Three teenagers, Anthony Franks, Molly Tierney, and Heather Elliott, were walking to Franks' home, when they were approached

by a man who demanded that they turn over all their money to him. Franks and Elliott gave the man their money, the third teenager, Tierney, did not, because she had no money.

At trial, Franks identified Petitioner as the individual who demanded his money. Franks testified that, after Franks and Elliott gave Petitioner their money, Petitioner ordered him and Tierney to continue walking and Elliott to accompany Petitioner. As Franks and Tierney were walking away, Franks looked back and saw Petitioner walking behind Elliott, holding a gun to her head. Franks and Tierney walked to a liquor store where they called police. Police took Franks and Tierney to the location where the incident occurred. After approximately one-and-a-half hours, Petitioner was brought to the location. Franks testified that, initially, he was not certain that Petitioner was the individual who robbed him, but, after a few minutes, he was able to positively identify Petitioner.

Molly Tierney testified that a man she identified at trial to be Petitioner approached her, Franks, and Elliott as they were walking home and demanded money. She had no money to give him. At some point, when he was standing about two feet from her, he pulled out a black handgun. Tierney testified that he told her and Franks to leave. He then grabbed hold of Elliott. He held the gun toward Elliott's head as he led her away. Tierney further testified that she and Franks were taken to the location where the robbery occurred. Petitioner was brought to the location, and Tierney identified him as the man who had robbed her.

Heather Elliott testified that a man she identified as Petitioner demanded money from her and her two friends. She gave him $25.00. He then pulled out a gun, and told Franks and Tierney to step back, and told Elliott she must come with him. He kept the gun to the back of her head and led her down a side street. Elliott testified that he pushed her into an abandoned

building and sexually assaulted her. When a car drove by and a helicopter flew overhead, Petitioner ran. Elliott was taken to the hospital by her father. She testified that she was later taken to the police station, where she identified Petitioner in a lineup.

Detroit Police Officer Ryan Connor testified that, sometime between 2:00 and 3:00 a.m., on August 1, 2004, he and his partner, Greg Gilinski, were dispatched to look for a robbery suspect in a certain Detroit neighborhood. They were given the following description of the suspect: black male, 150 pounds, thin build, wearing a white tank top underneath a blue button-up shirt, and blue jean shorts. They saw a man matching this description. Officer Connor stopped the squad car, exited the vehicle, and ordered Petitioner to stop. Petitioner did not stop. Instead, he walked briskly to a residence. As Petitioner was walking up the steps of the home, he tossed something under a patio chair. Officer Connor drew his weapon and ordered Petitioner to exit the house. Petitioner did so and was apprehended. Officer Connor looked under the patio chair and found a blue flannel shirt and a baseball hat. Officer Connor testified that he then took Petitioner to the location of the robbery for a show up.

Detroit Police Sergeant Erik Decker testified that he was present for the show up. Molly Tierney positively identified Petitioner as the robber within a second or two. Anthony Franks thought the suspect looked like the robber, but was not certain.

Detroit Police Sergeant Otha Craighead testified that he conducted a live lineup for Heather Elliott to view on August 1, 2004. He testified that Elliott immediately picked Petitioner out of the lineup.

## II. Procedural History

Petitioner stood trial on seven counts: two counts of criminal sexual conduct in the first

degree, two counts of armed robbery, one count of assault with intent to rob, one count of felon in possession of a firearm, and one felony firearm count. Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of two counts of unarmed robbery and acquitted on all other counts. Petitioner was sentenced as a fourth habitual offender to twelve to twenty years in prison for each count of unarmed robbery, to be served concurrently.

Petitioner filed an appeal as of right in the Michigan Court of Appeals raising six claims for relief: (i) the trial court erred in giving an unarmed robbery jury instruction; (ii) trial counsel was ineffective for failing to object to the unarmed robbery instruction; (iii) offense variables were incorrectly scored; (iv) sentence violated *Blakely v. Washington*, 542 U.S. 296 (2004); (v) trial counsel was ineffective for failing to object at sentencing; and (vi) remand was necessary to correct pre-sentence information report.

In an unpublished, *per curiam* decision, the Michigan Court of Appeals affirmed Petitioner's convictions, but remanded to the trial court to strike from the pre-sentence information report references to the sexual assault that the trial court had determined were not substantiated. *People v. Erving*, No. 261899, 2006 WL 2918917 (Mich. Ct. App. Oct. 12, 2006).

Petitioner then sought leave to appeal to the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals. In a brief order dated February 27, 2007, the Michigan Supreme Court denied Petitioner's leave to appeal. *People v. Erving*, 477 Mich. 1022, 727 N.W.2d 617 (2007).

Petitioner then filed the pending petition, raising the following claims:

I. The giving of the unarmed robbery instruction was plain error and denied Petitioner-Appellant a fair trial because a rational view of the evidence did not support it.

II. When trial court gave erroneous instruction trial counsel failed to object which constituted ineffective assistance of counsel.

III. Petitioner-Appellant is entitled to be re-sentenced because the sentencing judge was laboring under a misconception of law.

### III. Standard of Review

A petition for a writ of habeas corpus is the sole federal remedy for a person seeking to challenge the jurisdiction of a state court conviction. *Preiser v. Rodriguez*, 411 U.S. 475 (1973). Section 2254(d) of Title 28 U.S.C. states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a set of materially-indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly-established federal law correctly or incorrectly.

Rather, that application must also be unreasonable." *Id.* at 410-11.

## IV. Discussion

### A. Jury Instruction

Petitioner argues that the giving of an unarmed robbery instruction to the jury was plain error. He alleges that the instruction denied him a fair trial because a rational view of the evidence did not support the instruction.

Respondent argues that this claim is procedurally defaulted. "The U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), *citing Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of this claim.

Generally, claims of alleged erroneous jury instructions are not cognizable in federal habeas review unless the instruction "'so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). "Before a federal court may overturn a conviction resulting from a state trial in which this instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughten*, 414 U.S. 141, 146 (1973). It is not enough to show that the instruction was incorrect under state

law. *Estelle v. McGuire*, 502 U.S. at 71-72. The instruction "may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Id.* at 147. To warrant habeas relief, a petitioner must show that the jury instructions given rendered the entire trial fundamentally unfair. *Murr v. United States*, 200 F.3d 895, 905 (6th Cir. 2000).

In its final charge to the jury, the Court instructed the jury that it could also consider the lesser-included offense of unarmed robbery. Michigan law permits a jury to receive an instruction that allows for a lesser-included offense. *See People v. Cornell*, 466 Mich. 335 (2002)(holding that Mich. Comp. Laws § 768.32(1) permits lesser-included offenses where the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser-included offense and is supported by a rational view of the evidence.) *See also People v. Reese*, 466 Mich. 440 (2002).

The Michigan Court of Appeals found that the evidence on the record supported the unarmed robbery instruction. The state court noted that, although the three victims all testified that Petitioner possessed a gun at some point during the robbery, defense counsel repeatedly challenged many aspects of the victims' testimony, including their testimony regarding the gun. In addition, defense counsel also highlighted the police's failure to recover a gun. The state court concluded: "Because the jury's verdict demonstrated a rejection of the teenagers' testimony and an acceptance of defendant's theory, it cannot be determined either that any instructional error occurred or that inclusion of disputed instruction by the trial court was outcome determinative or resulted in the conviction of an innocent person.." *Erving,* 2006 WL 2918917 at *2.

Petitioner has not shown that the state court's conclusion that the jury instruction was

supported by the evidence and in accordance with Petitioner's defense was contrary to or an unreasonable application of Supreme Court precedent. Nor has Petitioner shown that the disputed jury instruction rendered his trial fundamentally unfair. Accordingly, the Court denies habeas relief on this claim.

### B. Ineffective Assistance of Counsel

Petitioner argues that defense counsel's failure to contemporaneously object to the unarmed robbery jury instruction so prejudiced his case as to amount to ineffective assistance of counsel.

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right. . .to have the Assistance of Counsel for his defense." U.S. Const., amend. VI. This guarantee by the Sixth Amendment is the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685 (1984).

In *Strickland*, the Supreme Court established a two-pronged test for evaluating a claim of ineffective assistance of counsel. First, a petitioner must show that counsel's performance was deficient. *Id.* at 687. To show such deficiency, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id*. The Supreme Court declined to assert specific guidelines to determine appropriate attorney conduct. Instead, the Supreme Court noted that the standard was "simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)(quoting *Strickland*, 466 U.S. at 688; additional internal quotations omitted). The reviewing court's scrutiny of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 689. A court must "recognize that counsel is strongly presumed to have rendered adequate

assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The petitioner must bear the burden of overcoming the presumption that counsel's actions were not sound trial strategy. *Id.* at 689.

Second, a petitioner must show that counsel's deficient performance prejudiced the petitioner. *Strickland*, 466 U.S. at 694. To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686.

The Michigan Court of Appeals held that Petitioner's ineffective assistance of counsel claim was without merit. Defense counsel argued Petitioner's theory of misidentification and attacked several perceived weaknesses in the prosecution's case. Defense counsel pointed out the prosecution's inability to produce the weapon and the witnesses' inconsistent statements. Defense counsel highlighted inconsistencies in testimony regarding the type of weapon observed. Given this defense, the Michigan Court of Appeals concluded that counsel's decision to accept the unarmed robbery instruction may have been a reasonable strategy designed to protect Petitioner from conviction of the more serious armed robbery charges.

The Court finds that the state court's conclusion was not contrary to or an unreasonable application of *Strickland*. As the state court noted, the unarmed robbery jury instruction was consistent with the defense theory. Accordingly, this Court denies habeas relief on this claim.

### C. Sentencing

Petitioner argues he is entitled to be re-sentenced because the sentencing guidelines were incorrectly scored. Specifically, Petitioner argues that the trial judge incorrectly scored offense variables 3 and 10. Additionally, Petitioner argues that the sentence violates the holding of *Blakely v. Washington*, 542 U.S. 296 (2004).

"[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). "[S]tate courts are the ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). "[A] claim that the trial court mis-scored offense variables in determining the state sentencing guidelines is not cognizable on habeas corpus review." *See Adams v. Burt*, 471 F. Supp. 2d 835, 844 (E.D. Mich. 2007); *see also Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987). Therefore, Petitioner's claim that certain offense variables were incorrectly scored is not cognizable on habeas corpus review.

In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court held that any fact, other than a prior conviction, "that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Id.* at 476. However, Michigan has an indeterminate sentencing system for most crimes. The maximum sentence for Petitioner's crimes is set by Mich. Comp. L. § 769.12.

In *Blakely*, the Supreme Court addressed indeterminate sentencing systems and held that an indeterminate sentencing system does not violate the Sixth Amendment. *Blakely*, 542 U.S. at 309. The Court explained that while indeterminate sentencing systems may involve judicial fact-finding of those facts a judge may find important to the exercise of the judge's sentencing

discretion, those facts "do not pertain to whether the defendant has a legal *right* to a lesser sentence. . . ." *Id*. (emphasis in original). Judicial factfinding may not be used to impose a sentence "beyond the prescribed statutory maximum." *Apprendi*, 530 U.S. at 490. In this case, the sentencing court did not exceed the statutory maximum for Petitioner's crimes. Therefore, the sentencing scheme did not run afoul of the Sixth Amendment. Because *Blakely* does not apply to indeterminate sentencing schemes like the one utilized in Michigan, the trial court's sentence did not violate Petitioner's constitutional rights. *See Tironi v. Birkett*, No. 06-1557, 2007 WL 3226198, * 1 (6th Cir. Oct. 26, 2007) ("*Blakely* does not apply to Michigan's indeterminate sentencing scheme.").

### D. Denial of Leave to Appeal By Michigan Supreme Court

Petitioner also challenges the denial of his leave to appeal to the Michigan Supreme Court. Petitioner claims that the decision by the state highest court to not to review the Court of Appeals' decision affected his due process rights.

Denial of leave to appeal to the state highest court is not a violation of due process rights. *See Wainwright v. Torna*, 455 U.S. 586, 587-88 & n. 4 (1982) (per curiam) (holding that petitioner was not denied due process by the state supreme court's dismissal of an untimely-filed application for discretionary review or by retained appellate counsel's failure to file a timely application for discretionary review with that court, because petitioner neither had an absolute right to appeal his conviction to the state supreme court nor a constitutionally-protected right to effective assistance of counsel in seeking discretionary review by the state supreme court).

Petitioner's due process allegation is conclusory and non-cognizable on habeas review. Accordingly, this Court will deny the claim.

## V. Certificate of Appealability

A petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. 28 U.S.C. §§ 2253(c)(1)(A), (B). A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37. When a federal district court denies a habeas claim on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484-85.

Here, the Court concludes that jurists of reason would not find the Court's assessment of the constitutional claims or procedural issues debatable or wrong. The Court declines to issue Petitioner a certificate of appealability. Nor should Petitioner be granted leave to proceed on appeal *in forma pauperis*, as any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

## VI. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that this Court **DENIES** the petition for a writ of habeas corpus and the matter is **DISMISSED WITH PREJUDICE**.

<pre>
                                        s/ DENISE PAGE HOOD
                                        DENISE PAGE HOOD
                                        UNITED STATES DISTRICT JUDGE
</pre>

DATED: April 29, 2010

I hereby certify that a copy of the foregoing document was served upon Craig Erving, Reg. No. 185366, Carson City Correctional Facility, 10522 Boyer Rd., Carson City, MI 48811 and counsel of record on April 29, 2010, by electronic and/or ordinary mail.

<pre>
                                        S/William F. Lewis
                                        Case Manager
</pre>